Mr. Justice James
delivered the opinion of the Court:
This is an action to recover damages for injuries alleged to have been caused by the negligence of the defendant in failing safely to land and deliver the plaintiff as a passenger on its road. It appears that the plaintiff boarded one of the defendant’s cars on Pennsylvania Avenue, to ride to Nineteenth Street. As to what happened at his stopping place there was, of course, a conflict of evidence.
On the part of the plaintiff there was evidence tending to show that when he approached Nineteenth Street he signaled the conductor of the car to stop, and that the conductor thereupon rang the bell and the motion of the car began to slack, and that he arose to go out of the car, and that the platform was crowded with passengers; that there were at least eight or ten passengers on the platform, and two, a man and a boy, were standing on the step of the car against the rails, the boy standing next the body of the car and the man standing on the other end of the step next the dash or railing at the rear end of said car; that he crowded his way through the crowd on the platform, and stepped down on the step while the car was still in motion, but moving very slowly; that he was unable to get hold of either of the railings because the man and boy were so standing on the step, and that after he had been waiting for the car to stop the conductor rang the bell, and the car suddenly started forward, and there was a sudden jerk of of the car that threw him off upon the street]; that at the time plaintiff signaled the conductor to stop the latter was engaged in figuring up his accounts, and was standing with his back to the rear door, leaning against the jamb, and, after ringing the bell to stop, remained standing inside the car and did not go out to assist plaintiff off the platform or step, and that while plaintiff was standing on the lower step of the car the conductor rang the bell from the inside and the car started forward with a jerk and threw him off.
The plaintiff himself further testified that this was about *61 9 o’clock at night; that he was in the habit of riding home on this line of cars and sometimes with this same conductor ; that on this occasion the car was so full that he could not easily get through the crowd in the time the conductor gave him, but he finally got upon the lower step, crowding his way between a man and a boy standing on that step, and was prevented from getting hold of anything to support himself by reason of their positions; that plaintiff was not in the habit of getting off a car while it was in motion, and did not do so on this occasion, but was jerked off by the sudden jerking forward of the car while he was waiting for it to come to a full stop;' and finally that there were more than a dozen passengers inside the car.
On the part of the defendant there was evidence tending to show that only thirty-five passengers rode on that car at anytime between the Navy Yard and Georgetown; that these got on and off from time to time; that a majority of them got off at the corner of Fifteenth Street and New York Avenue; that only five or six were inside the car at the time of the accident; that the plaintiff was in the habit of riding on defendant’s cars and landing at Nineteenth Street, and in the habit of getting off while the car was in motion; that, at the time in question, the plaintiff signaled the conductor to stop; that the conductor rang the bell and the car began to slow down; that the conductor was standing-on the rear platform when so signaled, and that when the bell was rang no other person was standing there except a small boy; that the plaintiff, after signaling, and without waiting for the car to stop, immediately went on to the platform and stepped down on the step, and, while the car was yet in motion but almost at a stand, stepped off on to the street, and then fell. The conductor himself speaks, we suppose, when the record adds “ That the conductor, while the plaintiff passed out on to the platform had hold of the bell rope, and was watching the plaintiff, and as soon as the plaintiff alighted upon the street and was free from the car, the con *62 ductor pulled the strap and the bell for the driver to start; but seeing the plaintiff fall, the conductor immediately rung the bell and the car stopped before proceeding half its length.”
As to the capacity of this car, there was evidence that there were seats inside for twenty-two persons.
Although this cause is not before us on a case stated, we have found it necessary to state at some length the testimony set out in the bills of exception, in order to consider the relevancy and effect of the instructions to the jury to which exceptions were taken.
The following instruction, given at the instance of the plaintiff, is the first point of objection by the defendant:
“3. If the jury believe from all the evidence that the plaintiff requested the conductor of the car, on which he was a passenger, to let him out at or near Nineteenth Street, on Pennsylvania Avenue, in the City of Washington, and thereupon the conductor rang the bell while inside the car, and remained there in a position where he could not ascertain whether the plaintiff had descended safely from the car or not, and rang the bell to start before the plaintiff had alighted from it, and the plaintiff was thrown, or jostled therefrom while attempting to get off, by the sudden movement of the car, and thereby injured, the defendant would be responsible for his injuries, and the plaintiff be entitled to a verdict.” ■
It is objected that this instruction assumes as a fact that the position of the conductor, if he did ring the bell inside the car and did remain there, was one which prevented him from seeing whether the plaintiff had descended safely from the car, when he rang the bell for starting. Such a fact is so important that it is very material that it should not in any degree be taken from the determination of the jury. We are of opinion that the instruction was on that account objectionable.
The next exception is to the following instruction:
*63 “ 4. It was the duty of the conductor to see that the car was not so crowded, either inside or on the platform, as to impede or interfere with the departure in safety of passengers from it; and if the car was so crowded, it was the duty of the conductor to make room for the plaintiff to get off in safety, and to await his safe descent from it to the ground, before giving the driver the signal or sound for starting the car; and if he neglected or failed to do so, it was negligence on his part for which the defendant is responsible, provided, as a consequence of such failure or neglect, if it existed, the plaintiff received the injuries of which he complains in his declaration.”
In the charge to the jury the Court added the following comments upon this instruction; to which, also, exception was taken:
“ I conceive that to be correct law. A party taking his seat in one of these cars is entitled to have such use of his seat, and of his person, upon leaving the car, as will enable him to do so in safety; and if the car is overcrowded inside, so that he is delayed a long time in getting off, and is unable to get off in safety, or if there is a crowd on the platform against the railing of the car, and in consequence of either of these circumstances he is unable to get off in safety, then that would constitute a case of negligence, on the part of the conductor, for which the defendant would be responsible. It is perfectly absurd for them to content themselves with sticking up notices that the cars are not to be overcrowded, and then allow them to be overcrowded.”
We think that the inevitable effect of the original instruction, and, still more, of the comments by which it was enforced, was to present to the jury, as a matter which demanded their consideration, and which they might find to be a cause of the injury, an overcrowding inside of the car, which had the effect to delay the passenger a long time in getting off, so that he was unable to get off in safety. There does not appear to have been any evidence at all from which *64 the jury could have a right to conclude that there was overcrowding inside, nor was there anything to intimate that this number constituted overcrowding, or that it in any way affected his movements. The very fact that such overcrowding inside of these cars would constitute an outrage upon the rights of the public which could only excite the indignation of a jury, would cause an assumption that it had occurred in the case at bar to have some effect upon their minds. The ordinary rule that hypotheses which are not supported by any evidence are not to be submitted to the consideration of a j ury, as the basis of a conclusion in arriving at a verdict, becomes all the more important when the hypothesis is of conduct so utterly inexcusable.
The most important exception, however, was to the refusal of the Court to give the following instruction asked for by the defendant:
“7. If the jury shall be satisfied from the evidence that when the plaintiff signaled to the conductor to stop the car the conductor rang the bell for that purpose, and the car immediately began to slow down its speed, and that the plaintiff, without waiting for the car to stop, undertook to .and did step from the. car while it still was in motion, and was injured, he cannot recover, and the defendant is entitled to a verdict.”
The situation submitted by this prayer was, that the plaintiff had signaled the conductor to stop the car, and .that the conductor had rung the bell for the purpose of stopping, and that the car was slowing down in execution of that purpose. The case supposed was, in short, that the defendant was actually complying with its duty of stopping for the passenger to get off, and that, while the defendant was thus performing its duty (in other words, was not in fault) the plaintiff elected to get off without waiting for the completion of the defendant’s duty.
The case presented would be one in which the defendant had not yet been guilty of any negligence. In such a case it *65 would be irrelevant to inquire whether the plaintiff’s own conduct amounted to negligence, and was thereby a contributory cause of the injury. It would be enough that, if the case existed as supposed, the defendant’s acts would not be the cause at all of the injury supposed.
The effect of the rejection of this prayer is rendered the more marked by the fifth instruction actually given, at the instance of the plaintiff, in the following words:
“If the jury believe from all the evidence that the car on which the plaintiff was a passenger had not entirely stopped when he reached the lower step or nearly so, and that it was moving slowly or very slowly, the getting off of the plaintiff at that time would not of itself relieve the company of the responsibility, and it will be for the jury to consider and determine, in view of all the facts and circumstances, whether it was negligence on the part of the plaintiff to attempt to get off before the car had entirely stopped and while it was moving at reduced speed and slowly, if he did so.”
This instruction contains an assumption that the defendant had done something for which it was responsible— in other words, had omitted some duty; and the particular implication seems to be that the car was merely slowing up, and was not in process of actually stopping in order that the plaintiff might alight safely. We think the question whether the defendant’s act involved an omission of care — in other words, whether the defendant was coming to a full stop, should have been submitted to the jury, before they should be allowed to consider whether the plaintiff’s conduct in getting off while the car was in motion was contributory negligence. To put the latter question as it was here put involved an assumption that there was already negligence on the' other side.

For these reasons judgment is reversed and the cause is remanded for a new Vrial.